Our next case is Google v. Singular Computing LLC Counselor Speed, I see you've reserved 5 minutes in front of the bubble Just a second, the next file May it please the Court, Nathan Speed on behalf of Google Singular's patents describe a computer that includes what the patents call a low-precision, high-dynamic range execution unit or LPHDR execution unit The Board found unpatentable Singular's claims to a computer that had one LPHDR execution unit The only remaining issue is whether or not the Board correctly found that Google did not prove it would have been obvious to have a computer with more than one LPHDR execution unit On that issue, the Board committed legal error Before the Board, our argument was that OPPOSA would start with what we call the DOXA reference DOXA includes an execution unit called an FPP There's no dispute at this point that DOXA's FPP is an LPHDR execution unit The advantage that DOXA describes for its FPP is that it allows for lower power consumption, which is ideal for laptops because they run on batteries We then turn to Macmillan. Macmillan is a reference that describes how to bring supercomputing power to laptops, just like DOXA describes And it describes a parallel processing architecture that has many processing elements Each of the processing elements includes a floating-point accelerator Our argument was that OPPOSA, looking at both references, would see how they could be fit together And they would take DOXA's FPP and use that as the floating-point accelerator in Macmillan's device The resulting device would be a computer with many LPHDR execution units, rendering the claims obvious There was no argument below that OPPOSA could not have achieved this invention And there was no dispute below that the resulting invention would have achieved both of those benefits A high-performance laptop that consumed less power The Board rejected it solely on the finding that the combination would have cost more money to manufacture than the Macmillan laptop alone Respectfully, that was legal error I didn't read the Board as saying nothing but cost I thought there was this mix of things related to cost One of which was complexity and maybe an occasional reference to science So the Board did try to align its decision with the case law Because the case law is pretty clear that economic costs alone do not negate an otherwise technologically motivated combination What the Board did was point to the various discussions in Macmillan that said that We want to avoid complexity in size, not for technological reasons, but because of the economic costs that complexity in size would create Macmillan, Column 1, starts to introduce the invention And this entire invention is about the fact that supercomputers at that time This is the 1990s when Macmillan was written They were really good at performing a lot of calculations But what if we were to conclude that the Board was reasonable in its reading of the Macmillan reference To be that Macmillan is trying to look for the most simple stripped-down design possible To accomplish supercomputing inside of a personal laptop computer So its objective, yes, is to keep it as low-cost as possible But blended with that is this strong objective to use as many simple elements as you can In order to accomplish this supercomputing goal I'll engage you in a second with the facts of what Macmillan is I guess the question is, if we were to say that that's a fair reading or a reasonable reading of the reference Then would you not agree that we would have to affirm? I would disagree In addition to the case law on economic costs not providing a motivation This court has also had a series of cases where you've made clear That the primary purpose of the prior art reference does not control Prior art references are good for everything they disclose So in this case, whether or not Mr. Macmillan wants to keep this laptop as cheap as possible And I'll talk about that in a second That's his invention and that's what he disclosed to the public But he also, in doing that, described a laptop that had parallel processing And numerous processing elements, each of which has a floating-point processor And therefore opposed to looking at that And not concerned as much about cost as Macmillan might have been But concerned more about power consumption and high-performance computing We have case law that says, you know, we're not going to adopt a proposed combination If that combination would defeat a reference's objective Like the reference you are about to modify If that reference is essentially saying, I have a core objective here And that that core objective would be somehow erased by the combination Then our case law says, then that's a fair basis to reject the proposed combination Those cases, every single one that the board cited And that SIGGRAPH cited in its break They've all related to technological aspects of the computer Or of the prior reference So it's removing a technological feature of the reference So if someone wanted to take the Macmillan and remove its parallel processing architecture That would be contrary to its inventive purpose Which is adding a parallel processing architecture But what if it's also true that Or fair to say that Macmillan was looking for The most elemental, simplified architecture possible To do what it wants to do So that's where we would have to gauge on the facts of Macmillan And I would argue that substantial evidence doesn't support that reading of Macmillan Macmillan, it starts with a conventional laptop And it's adding a supercomputer architecture to it It is indisputably making that laptop more complex And more costly than it was before Macmillan came up with this invention At column 8 of Macmillan, he says A complicated machine, to be sure But the goal is the least complicated version of that complicated machine But he does talk about allowing Scalable performance at various price points So he's not saying this version I have here is the only version I have Indeed, the embodiment we relied on had 256 processing elements But he talked about having thousands of these processing elements So he's open to having a device that's much more complex Than the laptop embodiment that's disclosed in the specification But clearly, when he talks about cost He says you can have high-performance computing at moderate cost So the question is, in context, what type of cost is he talking about? And he's saying it's an additional cost that doesn't approach The exorbitant prices of then-existing supercomputers He literally, in column 1, says $100,000 So that's the cost that he's concerned about All of his discussion of complexity and size It all goes back to his overall purpose here Which is to bring supercomputing power to the everyday person So that they can have it in their laptops It's going to be more expensive, there's going to be a moderate cost to this laptop But he still saw that as a desirable feature And I think Opposa, desiring that feature And then wanting to have their laptop last a little bit longer On their plane ride to California, what have you Would look to Doctris FPP and see that that is providing A solution to a potential problem there Unless there's more questions on the cost issue If your honors were to reverse the board on that issue Reband would be necessary Except for this other ground that we have Which is the customization ground On the customization ground, it started from the same basic premise As the first one, where we have Doctris and Macmillan But in this one, instead of focusing on Macmillan's laptop We're focusing on another disclosure of Macmillan Which is that you can use his invention in an embedded computer That supports application specific processing like signal processing We then pointed to this reference called Tong Which is a research paper, and the whole purpose of Tong Was to test a bunch of benchmark signal processing applications To figure out do they really need full precision Or can they operate at lower precision And he concluded that five of those applications can work With varying degrees of low precision So he said, or disclosed to the public That these five applications don't need the overhead of full precision A person that's only reading all these references together Would see that you could piece them together To create an embedded computer That's application specific to support the signal processing Applications that Tong discloses And when you're doing that, you would just customize Doctris FPP Because at that point, you're never going to use its circuitry for full precision You're going to only use between 11 and 5 minutes of precision And at that point, if you know you're only going to use that There's no need to create the full Doctris Because it's going to have circuitry that's just never going to be used The board rejected that by finding that full precision Was fundamental to both Doctris and Tong Irrespectively, the record just doesn't support that The paragraph that they cited in Doctris, paragraph 3 It says, while some applications may require full precision Other applications may not This is paragraph 3, the one that the board relied on It admittedly says that for a general purpose processor A greater precision may be needed But our combination was not a general purpose processor It was an application specific processor I guess the sentence you're just quoting about Some need greater precision, others don't But then the rest of that sentence says And that's why we want selectable precision That's why we want the ability to have the flexibility To fine tune the precision For any given application that's operating When it's used in a general purpose processor That you know you might need full precision In an embedded context, you know you're never going to use that full precision So if you're reading Tong Isn't the whole point of Doctris to have selectable precision? And our combination maintains selectivity If you just were selecting between the various low level precision That Tong taught that its five signal processing applications Could use for. It had ones that worked well At eleven anticipates, but the others Elvin and Spinks, I believe they were called, worked well at as low as five So you'd be able to switch between those varying levels Depending on what signal processing application you were supporting at that time I think it's also important in Doctris Paragraph 3 It also says If it is known that an application always requires a certain reduced precision The floating point processor can be designed and built to that reduced precision That's what our combination was It is an embodiment in which you know that you're always going to have reduced precision And so Doctris Paragraph 3 is telling you that you can Design a processor specific to that And we would just maintain the selectivity of Doctris So that it could switch between the different signal processing applications That it's supporting in this embedded application specific embodiment As for Tong The board's decision on Tong Itself at page 81 explicitly identifies That Tong says not all programs need the precision Provided by generic floating point hardware The fine precision of the 23-bit Matissa is not essential And a single custom floating point format may be a viable option For particular applications Tong in no uncertain terms is saying that full precision is not fundamental It's suitable for certain applications And so with that teaching, having looked at Doctris Paragraph 3 It's better to customize this chip Reduce circuit space Because otherwise I'm going to have circuitry That's just never going to be used I'm happy to answer any further questions Mr. Lambrinacos Did I pronounce your name correctly? Lambrinacos, your honor Lambrinacos Thank you, your honor Good morning, your honors  The court has decided That we will not be using the The board did not err In finding that the teachings of Macmillan Which discourage additional size and complexity In the processing elements of Macmillan For the purpose of minimizing cost Were barred as a matter of law By the Farenkopf case and other cases The Farenkopf case specifically holds That a businessman's concerns Over the cost of making a combination Are not relevant Here the board did not rely on a businessman's concerns at all The board relied on specific teachings in Macmillan That in order to make a low-cost computer With supercomputing power One which could be used by consumers That the processing elements should be simplified They should not have additional registers They should not have additional output buffers Additional pins Because those features increase die size Increase packaging size and result in increased cost And so the board found that a combination with Doxer Would violate those teachings Doxer is a processor That actually contains not only the processor Which performs the mathematical operations But also an additional controller That additional controller goes with each Doxer processor And its job is to adjust the precision Of the Doxer processor And so a combination which would replace Each processing element in Macmillan With essentially two processors The Doxer arithmetic unit and the controller Would clearly violate what Macmillan was trying to accomplish Which was a simplified array of processing elements There was nothing in the Let me sort of step back for a minute From your description Because I don't take any issue Explain to me What the safe and first principles Are the right way of thinking About the role of cost Because I think at the heart Of what you're just articulating Is that cost If it is called out In one of the references as important Should be treated differently from cost If it is not called out in one of the references Tell me how we're supposed to think about Why that should be so I think the other side says not so Yes An invention that has as a goal Creating a device which reduces cost Does not fall within the Farenkopf line of case law Where It is the inventive goal At least where it is the inventive goal of the patent And the patent teaches technology That should be chosen in a way To meet that goal And what Macmillan does Is he discusses particular types of components Such as registers, such as output buffers As examples of technology Which you would not include In the Macmillan device Because it would hinder reaching his goal Of providing a low cost computer So he has technology teachings Which he advocates for in order to reach that goal I think you're just re-describing What I want to take as an accurate description Of what Macmillan says The question is as a matter of first principles Why should that matter In light of things like I think Mr. Speed referred to References teach Whatever they teach Even components of what's in The references Ultimate goal of creating something That combines things It may be obvious to take one piece that it teaches And shed others And thereby not reach the reference's goal I'm trying to understand how to think about Why this accurate description You're giving of Macmillan Should matter for the bottom line conclusion Of whether there's a motivation to combine Because you're not combining the whole thing Yes, the ultimate goal matters Because under the case law A combination Which would eviscerate Or would force you Or would result in your failing to meet The inventive goal is not obvious So if the inventive goal of Macmillan Is a low cost computer And your combination would prevent you from reaching that goal Because you violated technological teachings In the reference Then that combination is not obvious The same applies for Doxer Doxer's inventive concept is to create a general purpose processor The general purpose processor Can execute all the applications That are presented to the processor Where it's installed Everyone agrees that Doxer has full precision support But Doxer has full precision support Because his goal was to present Something which is general purpose He acknowledges that there exists special purpose Or low precision processors in the art But that's not what he's doing He's presenting a general purpose processor And so a combination such as in ground 4A Which would remove that full precision support Would eviscerate Doxer's inventive goal So on that one I think as I understood Mr. Speed's point Was that Grant all of that But the claims here Require general purpose computers Or general purpose processors They require a processor that does certain things And there are such things Which the market is by assumption interested in Special purpose processors And why wouldn't a well-skilled artist Thinking about making a special purpose processor For one of the purposes For which precision just isn't needed Make this combination Of massively parallel Imprecise only In addition to the size arguments Which apply also to Mr. Speed's argument A person of ordinary skill in the art Under the case law Does not go to a reference And modify that reference in a way That would remove that The inventive concept And so the reason why A person of ordinary skill in the art Wouldn't look to a general purpose processor To create a special purpose processor Is because the law in an attempt to remove Hindsight combinations Has certain guardrails on how to modify a reference And under the Camorra's line of case law If the reference is teaching a person of ordinary skill This is the CPU of a device It is to execute all of the Applications that are running On this device A general device such as a laptop, a PDA, etc You would not take that reference And strip away what makes it The invention in the doctor's mind And is disclosed in the publication itself To put it into your combination In order to invalidate a claim So it's the line of case law Such as the Camorra's case In the petition Was this idea That the claims cover processors That are not just general purpose processors And somebody would be interested A relevant skilled artisan would be interested In making special purpose processors And those special purpose processors Essentially provide the motivation for this What the Doxer, Macmillan, Tong combination Is that adequately presented in the petition? Well The first part of what your honor said About the claims presenting a special purpose computer No, no, they don't require it They're completely indifferent about whether the processors That are in the claims are for general purpose use Or special purpose use Which means you could anticipate it Or make it obvious by special purpose Is that an adequately preserved argument? I don't mean to be asking A difficult question Yeah, I'm sorry but I didn't follow Did the petition set forth this theory Of a special purpose processor That we've heard about this morning The petition mentioned in round 4a That the modification would be In order to be able to run certain identified Low precision applications And that there is a skilled artisan Who would be interested in creating such a process It says I believe that A skilled artisan would be interested in doing so And particularly would remove The full precision capability of Doxer In order to decrease the cost Of the computer by eliminating Additional circuitry Which would take up space and cost money So what's interesting about their argument for 4a Is that they're arguing that a reduction in cost Because of less circuitry is a motivation to combine But they question whether Singular can rely on the fact that Macmillan teaches that you want to reduce cost And reduce size And Singular's argument is that Combination in round 3 and 4 would increase cost In other words It's an adequate motivation to combine for Google That cost reduction would take place by removing Circuitry But it is not an appropriate argument for Singular To say that the Doxer combination would increase cost And therefore Suggest to a person of ordinary skill in the art Not to make the combination Even though Macmillan explicitly contains those features Now the combinations that are cited by Google None of them are supported by the references themselves Macmillan doesn't suggest that his Processing elements can be replaced by low precision Processing elements Doxer doesn't suggest that his processing element Should be used in an array Or that it should be limited only to low precision Tong doesn't suggest that A computer should use only low precision In fact, he suggests that his processor would be used In a computer with a full precision processor And a switch to allow selection between them And Tong does not suggest Using his processor in an array So the only evidence that was before the board On these issues was provided by Google's expert Whereas Singular Throughout all of its arguments relied on the Teachings in the references themselves To show that a person of ordinary skill in the art Would be discouraged from making the combinations That Google advocates Because of the increased cost associated with Doxer In contravention of Macmillan's teachings As well as Doxer's teaching that his processor Is a general purpose processor And so And the board agreed with our reading of those references It agreed with our experts' discussion Of those references And how they ought to be interpreted And therefore the board had substantial evidence To find that Google had not met its burden of proof The board weighed the benefits that Google cites The board also weighed the evidence that we put in front of it And decided that for the claims That require a massively parallel group Of low-precision, high-dynamic range processors That that invention was not obvious Now should the board Should the court determine that There was an error below And that the decision should be vacated The board below expressly limited its findings On secondary considerations To claims with only one LPHDR execution unit The board did not address Explicitly did not address The claims to massively parallel arrays Of LPHDR execution units We presented evidence of industry skepticism We presented evidence of industry praise And that evidence was specifically Focused on the arrays And so that evidence has not been considered Yet by the board And so even in vacating the board's decision We should have the opportunity to present that evidence And perhaps even obtain further evidence As discovery is ongoing in a district court case And there may be evidence that would be relevant To the board's finding on secondary considerations It's also important to note For what are called the exceeds claims Under ground three and four Where the full precision capability is not excised From Doxer in the combination That the board did not consider the issue That the claims require That in a massively parallel array That there be a certain number of low precision High dynamic range execution units in the array That exceed the number of units that are capable Of doing full precision 32-bit multiplication Now that's important because Doxer is capable Of doing 32-bit multiplication Even if you consider it to be low precision The number of Doxer units cannot outnumber itself Under the claim Google is relying on an LPHDR execution unit Being Doxer but then excludes In a claim construction argument The ability of Doxer to satisfy The claim element that refers To the number of units So this is a point that doesn't need That the board did not need to reach Given how it upheld claims on another basis But would have to be reached If what the board did was set aside That's correct Would you like to conclude At this point do you have any other comments Yes your honor thank you very much You have a little over three minutes Thank you your honor Just briefly on the question of whether or not the petition raised it I point your honor to appendix 720 to 723 That's where we set forth the customized ground It's about an embedded system Supporting Tong's applications The other fact points The idea that adding registers Is the problem that Macmillan was teaching Macmillan explicitly Adds additional registers to the laptop Address location registers And that's at column 14 So Macmillan is actually adding registers Which is the only thing that St. Louis council cited As causing the increase in cost to Macmillan But going back to the question Is this a case of first principles That prior reference in that case The primary reference that was being modified Said the use of inhibitors is disadvantageous Because it's costly And the very combination was using inhibitors In that reference And the patent owner said you can't do that This reference says it's costly So why would you ever use inhibitors In view of this reference The federal circuit Made clear that a given combination Would not be made by a businessman For economic reasons Does not mean that persons skilled in the art Would not make the combination Only the latter fact would be relevant Economic costs are legally irrelevant The hypothetical person Is an ordinary artisan in the technical field They shouldn't be burdened by wondering If this invention is going to be too costly To be commercially viable in the market It's a question You get a patent if you come up with a technological invention There's nothing in Singler's patent This is a particularly device That he's found a way to achieve A lower cost silicon or anything like that He has an idea that you can have low precision High dynamic range execution units The problem for him is that Docter had it before Tong had it before The only basis that he has these claims now Is on the idea that it would be more expensive To manufacture Macmillan's laptop That is contrary to this court's law Most recently in grit energy This court vacated and remanded On this exact issue Because the board found that the combination Would have been more costly Even if we accept the board's factual determination That swapping the primary reference components Results in a more expensive system That determination standing alone Is insufficient to reject the technological reasons That the petitioner provided That's precisely what happened here The board allowed the cost concerns of Macmillan To stand alone and never address Our technological basis for the motivation There is no dispute that Poses could have achieved this laptop That it would have been a high performance computer And that it would have saved power Unless there's any questions I'm happy to rest on the briefs